UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:  Case Number: 18-13398-7

MICHAEL HARVEY,

      Debtor.

---

PARK STREET APARTMENTS, LLLP,
and CEDAR CREST ASSOCIATES, LLLP,

      Plaintiffs,

      v.  Adversary Number: 19-03

MICHAEL HARVEY,

      Defendant.

---

## **DECISION**

Michael Harvey ("Harvey") filed a voluntary Chapter 7 petition. Park Street Apartments, LLLP ("Park Street") and Cedar Crest Associates, LLLP ("Cedar Crest") (collectively, the "Plaintiffs") filed an adversary proceeding objecting to discharge under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4).

Meanwhile, the United States Trustee ("UST") filed its own adversary proceeding seeking denial of Harvey's discharge ("UST Adversary"). Following a three-day trial, the Court entered an Order and Judgment denying Harvey a discharge pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(5).

Plaintiffs now seek summary judgment on their claims. Harvey opposes summary judgment.

**BACKGROUND**

Harvey was a licensed Master Electrician and the owner of Able Energy Corp. ("Able"). He operated as an installer of residential and commercial solar energy systems through Able. Under Able, Harvey contracted for more than eighty projects with various Minnesota consumers for sale of solar systems and collected advance payments without performance or return of the money. Harvey also contracted for projects with Wisconsin consumers. Harvey controlled the Able bank accounts and testified during the UST Adversary that he received advance payments for Able projects without rendering performance.

In March 2018, the Minnesota Department of Labor and Industry ("MNDLI") issued a licensing order to Harvey and Able seeking to revoke their licenses and impose civil penalties based on a "variety of misconduct," including providing false and misleading information to consumers. Three months later, MNDLI filed a civil lawsuit ("State Court Action") against Able and Harvey in a Minnesota state court seeking restitution and injunctive relief.[1] The result was a judgment for MNDLI and an order for a Restitution Judgment of $1,560,311.12 against Able and Harvey for their collective indiscretions. This Court took judicial notice of the State Court Action and the Restitution Judgment during the UST Adversary. Plaintiffs were among the Minnesota customers included in the MNDLI State Court Action.

Bergstad Properties, Inc., manages several apartment buildings in greater Minnesota, including Park Street and Cedar Crest. In July 2017, Park

---

[1] Case No. 62-CV-18-3909

Street and Cedar Crest contracted with Able to install solar panels. The contracts for the two projects totaled $124,618.32. Neither contract stated a start or end date for the respective projects. Even so, through a document entitled "Typical Installation Time Frame," Able represented that each project would be completed within 6 to 33 weeks. Able's Vice President, Kris Sipe, signed both contracts.

Park Street and Cedar Crest each made advance payments of $77,083.50 between July 26, 2017, and September 28, 2017. Even so, Able failed to install the solar panels as promised. The Plaintiffs did not receive a refund.

Plaintiffs request summary judgment against Harvey because of his failures to honor Able's contract terms and to refund the advance payments. Plaintiffs also base their claims on misrepresentations, actual fraud, and embezzlement by Harvey.

Harvey does not dispute collecting the advance payments or failing to provide a refund despite the lack of performance. He argues the Plaintiffs have already received a judgment through the State Court Action and are precluded from bringing the same claims before this Court. Harvey moves to dismiss the adversary proceeding.

## DISCUSSION

Courts must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. BANKR. P. 7056 adopting FED. R. CIV. P. 56(a). At the summary judgment stage, the Court's role is to determine whether

there is a genuine issue for trial. The Court need not weigh the evidence to determine the truth. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The moving party "always bears the initial responsibility" to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the nonmovant must establish specific facts that show a genuine issue for trial. *See id.* at 587. The inferences drawn from the facts must be viewed in the light most favorable to the nonmovant party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The Court cannot consider facts that are not in the record. *Summit Credit Union v. Goldbeck* (*In re Goldbeck*)*,* 590 B.R. 881, 887 (Bankr. W.D. Wis. 2018). But federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992) (quoting *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979)). *See also Green v. Warden, United States Penitentiary,* 699 F.2d 364, 369 (7th Cir. 1983). A court may also take judicial notice of its "own records of prior litigation closely related to the case before it." *St. Louis Baptist Temple,* 605 F.2d at 1172.

For summary judgment determinations, the materiality of facts must be determined based on the governing substantive law. *Anderson,* 477 U.S. at 248. Pursuant to their adversary complaint, Plaintiffs seek an order that Harvey's combined debt of $154,167 is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). The Court must determine whether any genuine issues of material fact exist to except this debt from discharge.

But the Court must first address Harvey's claim preclusion defense before determining dischargeability under section 523 of the Code.

### A. Plaintiffs' Claims are not Barred by Collateral Estoppel or Res Judicata

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to "give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523 (1986). Federal courts must adhere to the preclusion rules chosen by the state from which the judgment is taken. *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 482 (1982).

Harvey argues the Plaintiffs have received a favorable state-court judgment for identical claims they now seek summary judgment for under this adversary proceeding. Thus, he does not dispute that Plaintiffs have a right to recover the amounts sought in this adversary. Even so, he believes the doctrines of collateral estoppel and res judicata prevent this Court from granting the Plaintiffs' summary judgment request. The judgment at issue comes from Minnesota. And so, Minnesota preclusion law applies.

Collateral estoppel and res judicata are related doctrines. As the Supreme Court of Minnesota has explained, "[a] fundamental rule embodied in the related doctrines . . . is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .'" *Kaiser v. Northern States Power Co.,* 353 N.W.2d 899, 902 (Minn. 1984) (quoting *Montana v. United States,* 440 U.S. 147, 153 (1979)).

Collateral estoppel, also known as "issue preclusion," bars the litigation of specific legal issues that have been adjudicated. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004). Under Minnesota law, for collateral estoppel to apply, these prongs must be met:

> 1) the issue must be identical to one in a prior adjudication; 2) there was a final judgment on the merits; 3) the estopped party was a party or was in privity with a party to the prior adjudication; and 4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Care Inst., Inc. v. County of Ramsey,* 612 N.W.2d 443, 448 (Minn. 2000).

Res judicata, or "claim preclusion," concerns "circumstances giving rise to a claim and precludes subsequent litigation—regardless of whether a particular issue or legal theory was actually litigated." *Hauschildt*, 686 N.W.2d at 840. It is a finality doctrine that mandates there be an end to litigation. *Id.*

Res judicata applies when (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party

6

had a full and fair opportunity to litigate the matter. *State v. Joseph*, 636 N.W.2d 322, 327 (Minn. 2001).

Harvey's issue or claim preclusion defense rests on the mistaken belief that Plaintiffs in this adversary were parties to the State Court Action in Minnesota. The State Court Action plaintiff was Ken Peterson, the Commissioner of the Minnesota Department of Labor and Industry. The Honorable Richard H. Kyle presided over the State Court Action and ordered Harvey and Able "to pay $1,560,311.12 in restitution, jointly and severally, to the *Commissioner for the benefit of the Minnesota consumers* harmed by their misconduct." District Court Order Granting Default and Summary Judgment at 17 (emphasis added).[2]

While the Plaintiffs' ordeal with Harvey and Able was highlighted in Judge Kyle's Order as an example of defrauded Minnesota consumers, Park Street and Cedar Crest were not actual parties to the State Court Action. And so, Harvey's preclusion defense under either collateral estoppel or res judicata does not apply to the Plaintiffs' summary judgment request before this Court.

B. Exceptions to Discharge under 11 U.S.C. § 523

The exceptions to discharge under 11 U.S.C. § 523 are construed strictly against objecting creditors and liberally in favor of debtors. *In re Crosswhite,* 148 F.3d 879, 881 (7th Cir. 1998). As the party objecting to discharge,

---

[2] The Minnesota State Court opinion was accessed through the UST's filed exhibits in the UST Adversary (Case no. 19-23).

7

Plaintiffs must prove each element of the discharge exceptions by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

### 1. Nondischargeability under § 523(a)(2)(A)

Under 11 U.S.C. § 523(a)(2)(A), a discharge in bankruptcy does not exempt a debtor from a debt arising from false pretenses, a false representation, or actual fraud.

A finding of nondischargeability for "false pretenses" or a "false representation" requires the creditor to establish that the debtor made a knowingly "false representation of fact . . . with an intent to deceive" and "upon which the creditor justifiably relied." *Zamora v. Jacobs (In re Jacobs)*, 448 B.R. 453, 471 (Bankr. N.D. Ill. 2011). For purposes of the "false pretenses" and "false representation" prongs, "intent to deceive is measured by the debtor's subjective intention at the time the representation was made." *Id.* at 472.

Reliance must be "justifiable." *Field v. Mans*, 516 U.S. 59, 73-75 (1995). Justifiable reliance is subjective and what is justifiable depends on the characteristics and circumstances of a particular case. *Id.* at 71. The justifiable reliance requirement does not impose an affirmative duty on creditors to investigate, unless "the falsity of the representation is easily detectable." *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002). Put differently, creditors cannot ignore obvious falsehoods. *Jacobs*, 448 B.R. at 472.

Unlike false pretenses and false representation, "actual fraud" does not require a misrepresentation or reliance. *See McClellan v. Cantrell*, 217 F.3d

8

890, 892-93 (7th Cir. 2000). Actual fraud encompasses varied circumstances and consists of "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another[.]" *Id.* at 893.

To establish a claim based on "actual fraud," a creditor "must prove that: (1) 'actual fraud' occurred; (2) the debtor intended to defraud the creditor; and (3) the debtor's actual fraud created the debt at issue." *Jacobs,* 448 B.R. at 471-72. As a result, scienter is a required element of all three prongs under section 523(a)(2)(A). *Id.* at 472. The required mental state must be present when a representation is made or at the time of a purportedly fraudulent act. *Id.* Thus, subsequent representations or acts fail to establish that the debtor had the requisite intent when the representation was made, or the act was carried out. *Id.* However, "courts may consider subsequent conduct to the extent that such conduct provides an indication of the debtor's state of mind at the time of the actionable representations or acts." *Id.* (citing *6050 Grant, LLC v. Hanson (In re Hanson),* 437 B.R. 322, 327-28 (Bankr. N.D. Ill. 2010)).

Circumstantial evidence may be used to establish scienter. *Rezin v. Barr (In re Barr),* 194 B.R. 1009, 1020 (Bankr. N.D. Ill. 1996). Thus, "where the debtor knowingly or recklessly made false representations that he knew or should have known would induce another to act, the court can infer an intent to deceive." *Jacobs,* 448 B.R. at 472. Actual fraud may be inferred "if the totality of the circumstances suggests that the debtor intended to cheat or otherwise deceive the creditor." *Id.*

Plaintiffs' complaint alleges that through his Able employees, Harvey solicited their business and promised to deliver "turn-key" solar systems saving more than $800,000 in electricity bills over the next three decades, as well as other tax credits and incentives. Plaintiffs were told their respective projects would enter Able's "job queue" upon receipt of advance payments. Park Street and Cedar Crest each made two advance payments of $77,083.50 based on Able's representations.

Plaintiffs allege that when the contracts were signed, and the advance payments were accepted, Harvey and Able knew they would be unable to fulfill the terms of the contracts. The complaint also alleges that through Able, Harvey made false representations with the intent and purpose of deceiving the Plaintiffs, who justifiably relied on such representations.

### a. *False Pretenses and Representation Under 11 U.S.C. § 523(a)(2)(A)*

For the "false pretenses" and "false representation" prongs, the Court must determine whether there is a genuine dispute that, through Able, Harvey knowingly made false representations that solar panels would be installed. The Court must also determine whether the representations were made with the intent to deceive, and that Plaintiffs justifiably relied on such representations when signing the contract and making their respective $77,083.50 advance payments.

The findings of the Minnesota state court and this Court's familiarity with Harvey through the UST Adversary establish a pattern of troubling business practices by Harvey and Able. During the UST Adversary, this Court

10

found that Harvey was the substantial majority owner of Able and controlled the Able bank accounts. It is undisputed that through Able, Harvey routinely collected advance payments for various installation projects without performance or refunds. Harvey testified as such during the UST Adversary. There is no genuine dispute that Park Street and Cedar Crest were the victims of Harvey's unethical business practices covered in detail in Judge Kyle's Order, as well as this Court's findings in the UST Adversary.

The Able contracts promised installation of solar panels. They state that the Plaintiffs' respective projects would enter Able's job queue once advance payments are received. It is reasonable that Plaintiffs justifiably relied on the installation of solar panels pursuant to the two contracts. It is also reasonable that Plaintiffs justifiably relied on the projects entering Able's job queue after receipt of advance payments.

While Park Street and Cedar Crest did not have affirmative duties to investigate the health of Able's business operations, the "justifiable reliance" element does not allow creditors to ignore obvious falsehoods. Plaintiffs signed the two Able contracts in July 2017 and made their respective advance payments between July 26, 2017, and September 28, 2017. The MNDLI did not move to revoke Harvey and Able's licenses until March 2018. The State Court Action was brought in June 2018. And so, there is no indication that Plaintiffs were aware of Able's financial or legal troubles at the time of entering into the contracts. All elements under the "false pretenses" or "false representation" prongs are satisfied.

### b. Actual Fraud Prong Under 11 U.S.C. § 523(a)(2)(A)

For the "actual fraud" prong, the Court must determine whether there is a genuine dispute: (1) that Harvey intended to defraud the Plaintiffs; (2) that actual fraud took place; and (3) the debt at issue was created because of the actual fraud. This prong does not require a misrepresentation or reliance. The Court can and does infer that actual fraud took place because the totality of the circumstances shows that Harvey intended to cheat or otherwise deceive the Plaintiffs. Judge Kyle's conclusions illustrate Harvey's acts:

> Restitution shall be joint and several against Defendants. As Able's founder, owner, registered agent, president, and chief executive officer, Harvey participated in, directed, or authorized Able's unlawful acts, or at the very least was negligent in failing to learn about and prevent them in the small business he solely owned and operated . . . . Harvey should bear personal liability because he directed corporate policies and activities and his actions or inactions facilitated Able's violations.

District Court Order Granting Default and Summary Judgment at 16-17.

Judge Kyle chose to summarize the Plaintiffs' story and ordeal with Harvey as an example of defrauded consumers. Considering Judge Kyle's findings and conclusions, along with judicial notice of this Court's findings in the UST Adversary, Harvey intended to defraud the Plaintiffs, actual fraud took place, and the debt at issue was created because of the actual fraud. All elements under the "actual fraud" prong of section 523(a)(2)(A) are met.

The signed contract, the copies of the down payment checks, and the Plaintiffs' pleadings are enough to prove each element of the discharge exception under section 523(a)(2)(A) by a preponderance of the evidence. Thus, the Court determines there is no genuine dispute as to any material fact that

the debts owed to Park Street and Cedar Crest are excepted from discharge under section 523(a)(2)(A). Plaintiffs are entitled to summary judgment for $154,167.

### 2. Nondischargeability under § 523(a)(4)

Section 523(a)(4) of the Code provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. . . ." 11 U.S.C. § 523(a)(4). "The meaning of these terms is a question of federal law." *ColeMichael Invs., L.L.C. v. Burke (In re Burke),* 398 B.R. 608, 626 (Bankr. N.D. Ill. 2008) (citing *In re McGee,* 353 F.3d 537, 540 (7th Cir. 2003)). Plaintiffs move for summary judgment under the embezzlement element of § 523(a)(4).

Embezzlement is defined as "the 'fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" *In re Weber,* 892 F.2d 534, 538 (7th Cir. 1989) (quoting *Moore v. United States,* 160 U.S. 268, 269 (1895)). To prove embezzlement, Plaintiffs must show—by a preponderance of the evidence—that: (1) Harvey appropriated funds for his own benefit; and (2) that he did so with fraudulent intent or deceit. *Digital Sys. Eng'g v. Moreno* (*In re Moreno*), 414 B.R. 485, 491 (Bankr. W.D. Wis. 2009).

There is no genuine dispute that Park Street and Cedar Crest entrusted advance payments to Harvey through Able. The Court must determine whether there is a genuine dispute that Harvey misappropriated the advance payments with fraudulent intent or deceit. Based on this Court's own findings and

conclusions in the UST Adversary, there can be no genuine dispute that Harvey misappropriated the funds with fraudulent intent or deceit.

During the UST Adversary, Harvey testified that Able routinely collected advance payments, to the tune of $1.5 million, without rendering performance or refunds. Harvey could not explain where or how the advance payments were spent. His failure to satisfactorily explain the loss of the $1.5 million was the basis for the denial of discharge under 11 U.S.C. § 727(a)(5). Further, Harvey's own testimony, as well as the testimony of Able's Vice President, Kris Sipe, painted a picture of Able collecting advance payments to cover ongoing business expenses, while knowing the payments would not go towards the projects of customers who had made such payments.

Here, the Plaintiffs' complaint, filed exhibits, and subsequent pleadings demonstrate—by a preponderance of the evidence—that Harvey embezzled the Plaintiffs' advance payments. And so, the Court determines there is no genuine dispute as to any material fact that the debts owed to Park Street and Cedar Crest are excepted from discharge under section 523(a)(4). Each Plaintiff is entitled to summary judgment for the amount of their respective advance payments.

## CONCLUSION

For these reasons, the Plaintiffs' Motion for Summary Judgment is granted. The debt owed to Park Street Apartments, LLLP, in the amount of $77,083.50 and to Cedar Crest Associates, LLLP, in the amount of $77,083.50 is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4).

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: July 10, 2020

                              BY THE COURT:

                              _____
                              Hon. Catherine J. Furay
                              U.S. Bankruptcy Judge